In re the Marriage of Katherine J. POW-ELL, n.k.a. Katherine Bradshaw Agbe, petitioner, Appellant,

v.

**James C. POWELL, Respondent.**

No. C4–85–490.

Court of Appeals of Minnesota.

July 9, 1985.

Becky Skinner Toevs, Messerli & Kramer, Minneapolis, for appellant.

Steven C. Pundt, Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

Katherine Powell appeals the district court's determination that her remarriage in January 1983 terminated James Powell's obligation to pay maintenance as provided in the 1982 judgment and decree dissolving their marriage. James Powell also appeals under Minn.R.Civ.App.P. 106, contending the trial court erred in refusing to award him attorney's fees. We reverse and reinstate the order of the referee who first heard the matter.

## FACTS

The parties were married in 1971, and their marriage was dissolved in May 1982. They had no children. The judgment and decree incorporates the terms of two stipulations dated March 1982. The parties' major asset was their homestead; James Powell was awarded full title to it upon payment of $6,000 to Katherine Powell. In addition, the decree provides:

> Respondent shall pay to the Petitioner, as and for maintenance, the sum of $100.00 per month for a period of sixty (60) months, commencing March, 1984

and continuing through February of 1989.

* * * Respondent shall maintain the $100,000 life insurance policy which he presently has until such time that his obligation for maintenance is satisfied, and until such obligation is satisfied respondent shall maintain as co-beneficiaries of said life insurance policy the Petitioner, Katherine J. Powell, and his mother, Evelyn Cage Powell.

The parties now dispute the reasons for the maintenance provision. Katherine Powell contends that the payments were intended to cover her student loans, which were incurred during the marriage. The loans amount to $6,000 and are payable in installments of approximately $100 per month beginning in March 1984. This payment schedule parallels the maintenance term provided in the decree. She argues that James Powell agreed to pay her loans because she worked while he completed his Ph.D. and that the payments were characterized as maintenance at his request so that he could deduct them from his taxes. James Powell argues that he did not agree to pay her student loans and that the payments were always intended to be maintenance. Nonetheless, he signed a promissory note in which he agreed to pay her $6,000 in installments of $100 per month beginning in March 1984.

Katherine Powell remarried in January 1983 while living in Nigeria. In July 1983 she returned here to collect some belongings. She and James Powell opened a joint savings account into which he agreed to deposit the monthly payments, because of difficulties in sending money in and out of Nigeria. In January 1984 he notified her by letter that an attorney had advised him that he was not obligated to make the maintenance payments because of her remarriage. *See* Minn.Stat. § 518.64, subd. 3 (1984). He consequently refused to make any of the payments, and in November 1984 Katherine Powell moved for arrearages and for income withholding pursuant to Minn.Stat. § 518.611. He moved in re-

sponse for an order terminating his maintenance obligation and attorney's fees.

The motion was heard before a family court referee, who found that James Powell's obligation to pay maintenance for 60 months "is not in any way affected by petitioner's remarriage." He assessed arrearages and denied James Powell's motion for attorney's fees. On review of the referee's recommended decision, the trial court disagreed and said:

[R]espondent signed a promissory note, dated March 8, 1982, pursuant to which he agreed to pay petitioner the sum of $6,000, which coincides with the total amount of the student loans, at a rate of $100 per month, commencing in March of 1984. Therefore, petitioner contends that the maintenance payments were, in effect, the repayment of her student loans, but the payments were characterized as "maintenance" for tax purposes. Although petitioner may have viewed the maintenance as an agreement to pay her student loans, respondent indicates that he disputes such a contention. * * * Based upon the disputed nature of the characterization of the maintenance provision and the clear language of the Judgment and Decree, the Court cannot * * * alter the terms therein.

### ISSUE

Did the trial court err in concluding that appellant's remarriage terminated respondent's duty to pay maintenance as provided in the judgment and decree?

### DISCUSSION

█ The trial court ruled that the "clear language of the decree" determines respondent's duty to pay maintenance after appellant's remarriage. We hold that the trial court erred in restricting the scope of its inquiry to the language of the decree. The statute provides:

*Unless otherwise agreed in writing* or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or

the remarriage of the party receiving maintenance.

Minn.Stat. § 518.64, subd. 3 (1984) (emphasis added).

■ James Powell executed a promissory note, which provided:

March 8, 1982

For value received, I promise to pay Katherine Bradshaw [Powell] the sum of six thousand dollars at a rate of one hundred dollars per month beginning in March of 1984.

s/ James C. Powell

The affidavits and documents received at trial leave no doubt that this note expresses the parties' expectations regarding the maintenance obligation. *Burr v. Burr*, 353 N.W.2d 644 (Minn.Ct.App.1984). Drafts of rejected stipulations showed that the parties negotiated the responsibility for payment of the student loans. The total amount of the maintenance obligation is the same as the total amount of Katherine Powell's loans. The date the maintenance obligation was to begin corresponds with the date Katherine Powell was to begin paying the loans, with a two-year interval between execution of the note and commencement of the payments. James Powell agreed to secure the maintenance obligation with a life insurance policy, and he helped her set up a joint bank account into which he agreed to deposit the payments. He acknowledges that he expected to make the payments, despite her remarriage, until an attorney informed him about the provisions of Minn.Stat. § 518.64, subd. 3. The promissory note is therefore sufficient under the statute to show that the parties "otherwise agreed in writing" that respondent's maintenance obligation would continue despite appellant's remarriage.

■ James Powell cross-appeals, contending the trial court should have awarded him attorney's fees under Minn.Stat. § 518.14. He provided no information about his financial circumstances, so the trial court clearly did not err in denying his request.

## DECISION

The trial court erred in terminating respondent's maintenance obligation under Minn.Stat. § 518.64, subd. 3. The promissory note executed by respondent is a writing sufficient to show that he agreed to pay maintenance despite appellant's remarriage. We reverse and reinstate the original order based on the referee's recommendation assessing arrearages and refusing to modify the maintenance obligation.

Reversed.