Diane M. **RUUD**, n.k.a. Diane M. Coopens, Petitioner, Respondent,

v.

**Charles A. RUUD, Appellant.**

**No. C9–84–2015.**

Court of Appeals of Minnesota.

Aug. 20, 1985.

Review Granted Oct. 29, 1985.

Rebecca Hanson Frederick, Minneapolis, for respondent.

Terry L. Hegna, St. Paul, for appellant.

Heard, considered and decided by the court en banc, consisting of WOZNIAK, SEDGWICK, HUSPENI, NIERENGAR-TEN, RANDALL and CRIPPEN, JJ.

## OPINION

RANDALL, Judge.

Charles A. Ruud appeals the October 10, 1984, judgment in this dissolution case. The judgment resulted from a post dissolution proceeding in which respondent Diane M. Ruud (n.k.a. Diane Coppens) sought enforcement of appellant's spousal maintenance obligation. We reverse in part and affirm in part.

## FACTS

The parties were married in 1975, and separated in December 1982. They have no children. Respondent sued for dissolution.

During the marriage, the parties accumulated assets including 15 parcels of real property. At the time of dissolution, 13 parcels remained. The parties disputed the fair market value of these parcels. After extensive pretrial negotiations, the parties reached an agreement which was presented to the trial court in an oral stipulation by the attorneys. This agreement provided for distribution of three parcels with a total net equity value of almost $200,000 to respondent and the remaining ten parcels with a total net equity value in excess of $250,000 to appellant.

In the stipulation, the parties divided their property and also agreed that appellant would make annual payments to respondent of $10,000 for a period of four years. The parties agreed that the first two payments would be classified as spousal maintenance payments while the final two payments would be classified as property settlement payments. The oral stipulation (on the record and transcribed) is worded in part as follows:

> In addition to that division of the real estate, the Respondent would also make payments to the Petitioner in the amount of $10,000 a year for four years. The first payment would be due and payable on May 15th, 1983, and the other payments would be due on the 15th day of May in 1984, 1985 and 1986. The first two of those would be identified and accepted by the Petitioner as lump sum maintenance payments and the second two will be accepted by her as lump sum distribution of the property settlement.

The actual dissolution decree signed by the court separated the four $10,000 payments.

In the decree under the heading "Real Property," the court awarded certain real estate to appellant and certain real estate to respondent, with respondent being granted a non-interest bearing lien running in her favor in the amount of $20,000 payable in two equal payments, one on May 15, 1985, and the second on May 15, 1986.

In the decree under the heading "Maintenance," it states as follows:

> The respondent shall pay to the Petitioner as and for maintenance the sum of

$20,000.00, payable in two equal annual installments on May 15, 1983 and May 15, 1984, and thereafter both parties waive any further claim against each other for further maintenance, and the Court shall have no further jurisdiction to consider any claim for maintenance not arising out of this provision.

In October, 1983, respondent remarried. As a result of this marriage, appellant believed it was not necessary to make the $10,000 maintenance payment which was due on May 15, 1984. Respondent sought relief from the court compelling this payment. Appellant brought a counter-motion seeking termination of his spousal maintenance obligation based upon respondent's remarriage.

Appellant's counter-motion also requested that respondent pay one half of the $11,822 income tax liability from 1982. Respondent first learned of this tax liability in August, 1983, when appellant asked for her signature on their 1982 joint income tax return.

The trial court conducted an evidentiary hearing on August 24, 1984. The court ruled that the spousal maintenance obligation was due immediately upon entry of the original judgment, but merely payable in two equal installments. Therefore, respondent's remarriage did not eliminate appellant's duty to make the spousal maintenance payment. The trial court also set respondent's tax liability based upon her proportionate share of the entire 1982 family income. The court's memo was incorporated into the judgment and states in part:

> While it is the rule in the State of Minnesota, absent a specific statement to the contrary, that alimony or maintenance terminates with the remarriage of the parties, a careful reading of the decree indicates that the $20,000 maintenance *is due immediately*, but merely payable in two annual installments. It is a specific amount; it is a total amount; and even though it is denominated as maintenance, it surely smacks of being property settlement. Nevertheless, the way it is worded, the Court considers it as mainte-

nance, obviously done for tax purposes. *But the Decree specifically sets forth that it is immediately due, but merely that payment is delayed.* The fact that the payment is delayed does not mean that a remarriage of the parties will eliminate the necessity to make that payment. * * * (Emphasis added.)

> * * * The Petitioner's income was $3,000.00; as a matter of fact, that primarily was derived from the Respondent. $3,000.00 is .057 percent of the entire family income; .05 percent of the $11,822.00 total tax obligation is $673.85. It was the Respondent's own actions that created the penalty and interest obligations, and the Petitioner, by no stretch of the imagination, should be considered liable to make contribution to that obligation.

Charles Ruud appeals from this judgment.

## ISSUES

1. Did the trial court err in ruling appellant must make a maintenance payment to respondent after her remarriage?

2. Did the trial court err in ruling respondent owed .05 percent of the parties' joint 1982 tax liability?

## ANALYSIS

### I.

*Maintenance*

This decision requires interpretation of Minn.Stat. § 518.64, subd. 3 (1982), which provides:

> Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

■ Appellate courts need not defer to the trial court in reviewing questions of law. *Van de Loo v. Van de Loo*, 346 N.W.2d 173, 175 (Minn.Ct.App.1984) (citations omitted).

Here, the trial court ruled that maintenance was due immediately upon judgment, and was therefore not "future maintenance" under § 518.64, subd. 3. Therefore, the court ruled appellant may not avoid payment of the $10,000 due May 15, 1984, merely because of respondent's remarriage.

Contrary to the trial court's incorporated memorandum, the dissolution decree does not specifically use the term "immediately due" nor does it state that the payment is "delayed." Instead, it states,

The Respondent shall pay to the Petitioner as and for maintenance the sum of $20,000, payable in two equal annual installments on May 15, 1983 and May 15, 1984 * * *.

In addition, we note that, although the court, in its memorandum, found that the installments entitled "maintenance" appeared to cross over into a negotiated property settlement, nevertheless, the court found them to be maintenance.

We do not disturb the trial court's characterization of the two payments as maintenance as that characterization not only is not clearly erroneous but, in fact, is the reasonable interpretation of the written stipulation. Thus, we apply Minn.Stat. § 518.64, subd. 3, which is a self-executing, clear and unambiguous statute.

There is no burden on appellant who wishes the stipulation and the dissolution decree to be interpreted in light of Minn. Stat. § 518.64, subd. 3, to have specifically incorporated that statute into the written stipulation. The burden would be on respondent, if she wished this dissolution to be exempt from the general rule that maintenance ends at remarriage, to set the exception out in the written stipulation or to expressly provide that term in the dissolution decree.

However, the parties did not take that necessary action. They did not agree in writing that respondent should continue to receive maintenance after remarriage. Nor did the court express anything contrary to the statute in the divorce decree.

The court may not supply that which the legislature purposely omits. *State v. Corbin*, 343 N.W.2d 874, 876 (Minn.Ct.App. 1984) (citations omitted.) Since the parties did not exempt themselves from the operation of the statute, we will not now do so. Therefore, we find that as a matter of law, Minn.Stat. § 518.64, subd. 3 (1982) controls, and the second maintenance payment need not be paid since respondent has remarried.

Although respondent claims to have an equitable argument, we feel obligated to apply the statutory mandate of § 518.64, subd. 3. Since there was no agreement in writing or otherwise expressly provided in the decree, the maintenance must end at respondent's remarriage.

Our court recently issued *Powell v. Powell*, 371 N.W.2d 9 (Minn.Ct.App.1985). That case involved the interpretation of a dissolution decree which stated in part:

Respondent shall pay to the Petitioner, as and for maintenance, the sum of $100.00 per month for a period of sixty (60) months, commencing March, 1984 and continuing through February of 1989.

In *Powell*, prior to the expiration of the sixty months, petitioner (payee) remarried and respondent (payor) argued that his obligation to pay for the full sixty months should be extinguished because of petitioner's remarriage. In that case, we upheld petitioner's right to receive the entire amount regardless of remarriage, but the case is distinguishable on the facts.

In *Powell*, the respondent executed a *promissory note* which stated that for value received he promised to pay petitioner the sum of $6,000 at a rate of $100 per month beginning in March, 1984. That promissory note was an independent written instrument and an actionable contract in its own right. Although dated contemporaneous with the dissolution decree, it neither referenced nor made itself contingent upon either a dissolution and/or a remarriage during the life of the terms of the note. That writing was enforceable on its face between the payor and the payee regardless of marital status. Thus *Powell*

does not constitute an exception to the statutory requirement of Minn.Stat. § 518.64, subd. 3 (1984).

## II.

*Income tax liability*

Charles Rudd also appeals the trial court's ruling that respondent must pay .05 percent of the parties' 1982 tax liability.

The trial court memorandum accompanying its order stated in part:

> While as far as the state and federal governments are concerned, it may well be that the parties are jointly and severally liable for the tax obligation. (sic) As between the parties, it would only seem appropriate that each party pay that portion of the tax obligation that has become payable by way of their income. The Petitioner's income was $3,000.00; as a matter of fact, that primarily was derived from the Respondent. $3,000,00 is .057 percent of the entire family income; .05 percent of the $11,822.00 total tax obligation is $673.85. It was the Respondent's own actions that created the penalty and interest obligations, and the Petitioner, by no stretch of the imagination, should be considered liable to make contribution to that obligation.

The trial court is vested with broad discretion in its determination of appropriate property division, division of debts incurred during marriage, and obligations of spousal maintenance. *Abuzzahab v. Abuzzahab*, 359 N.W.2d 329 (Minn. Ct.App.1984). On review, appellate courts will interfere with a trial court's discretion only when that discretion has been abused. *Id.* at 332.

Although appellant did not agree with the court's distribution of debt obligations, the trial court did not abuse the broad discretion given it in dissolution matters. There was no error in the apportionment of tax liability.

## DECISION

We reverse the trial court's decision regarding maintenance. Appellant does not owe respondent $10,000 for the maintenance payment due May 1984. This ruling does not affect respondent's right to the $20,000 balance due on the real estate.

We affirm the trial court's determination regarding the distribution of the parties' 1982 tax liability. Respondent shall pay .05 percent of the 1982 tax liability.

Reversed in part, affirmed in part.

SEDGWICK, Judge (dissenting).

I respectfully dissent only from the majority's determination of the maintenance issue.

Property and maintenance provisions of the dissolution judgment in this case were based entirely on the parties' stipulation. When respondent moved the court to enforce the terms of the decree the court found an ambiguity in the following paragraph of the stipulation:

> *In addition to that division of the real estate, the Respondent would also make payments to the Petitioner in the amount of $10,000 a year for four years.* The first payment would be due and payable on May 15th, 1983, and the other payments would be due on the 15th day of May in 1984, 1985 and 1986. The first two of those would be identified and accepted by the Petitioner as lump sum maintenance payments and the second two will be accepted by her as lump sum distribution of the property settlement.

(Emphasis added).

This paragraph followed paragraphs which divided 13 properties between appellant and respondent. The trial court recognized, as do we, that the $10,000 payments to be made each year were actually property settlement payments meant to equalize the division. The trial court attempted to do equity by stating that since those payments designated as maintenance were due immediately, but merely payable in two installments, they were not affected by Minn.Stat. § 518.64, subd. 3.

If the obvious intent of the parties is to be obliterated by the rigid application of

Minn.Stat. § 518.64, subd. 3, then the original stipulation was a fraud upon one of the parties or the court. I would either affirm the trial court or set aside the maintenance and property provisions of the judgment and permit trial on those issues, rather than permit appellant to obtain a disproportionate share of the property by reneging on his agreement.

HUSPENI, Judge, dissenting.

I respectfully dissent on the maintenance issue and would affirm the trial court thereon. I do not agree that the $20,000 designated as maintenance was immediately payable. I believe it was an immediately-determinable amount and a principal sum specified in the decree. However, I do conclude that the trial court was correct in treating this $20,000 as exactly what the parties intended it to be: part of a $40,000 property settlement.

The decree of dissolution is based upon the parties' stipulation as to all matters now at issue. The trial court determined that the parties intended to equalize their property division. That determination is sound. It is certainly supported by stipulation language quoted by the majority, and by the fact that the property settlement reached prior to the $40,000 provision gave property valued at $250,000 to husband and property worth approximately $200,00 to wife. The language setting forth payment of "$10,000 a year for four years" not only serves to equalize the earlier property division, it is also a specified principal sum, devoid of any contingency (such as death of the payee) which would clearly mark it as a true maintenance award.

The trial court concluded that $20,000 of the $40,000 was designated as maintenance in order to achieve a tax benefit. That may be. However, even though we recognize that the tax benefit might not materialize,[1] that fact does not alter the clear purpose of the parties' agreement.

The intent of the parties in their stipulation was correctly interpreted by the trial court. That intent was to create a property settlement, part of which was to be thinly disguised as a maintenance award. By application of Minn.Stat. § 518.64, subd. 3 (1982), the majority has rushed forth to rescue appellant from the obligations he assumed in the stipulation. Such rescue is unwarranted and makes this court an unwitting participant in effecting appellant's unfair release from obligations imposed upon him, not by a court order, but by his own agreement. The terms of that agreement neither anticipated nor permitted application of section 518.64, subd. 3.

---

1. Under federal law, maintenance (periodic payment) is deductible by the payor and includable in the income of the payee. However, the statute in effect on October 10, 1984 reads as follows:

(c) Principal sum paid in installments.—

(1) *General rule.*—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

(2) *Where period for payment is more than 10 years.*—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a) * * *.

26 U.S.C. § 71.