**In re the Marriage of Geraldine C. LANDWEHR, Petitioner, Respondent,**

**v.**

**Rainer M. LANDWEHR, Appellant.**

**No. C8–85–850.**

Court of Appeals of Minnesota.

Dec. 31, 1985.

Martin L. Swaden, Meshbesher, Singer & Spence, Minneapolis; for respondent.

Michael T. Feichtinger, Quinlivan, Sherwood, Spellacy & Tarvestad, St. Cloud, for appellant.

Heard, considered and decided by PARKER, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

PARKER, Judge.

This appeal is from the entry of an amended judgment and decree and the entry of a money judgment for property settlement arrearages. Appellant Rainer Landwehr had brought a motion to reduce monthly payments termed "alimony" in the stipulated judgment and decree. The trial court, finding ambiguity as to the nature of the provision, interpreted it to be part of the property settlement, denying appellant's motion. The court also amended the judgment to impose security for the monthly payments. We affirm the construction of the judgment and reverse the imposition of security.

## FACTS

Rainer and Geraldine Landwehr were divorced on March 26, 1981, having reached a stipulation which was incorporated into a judgment and decree. The Landwehrs operated a farm, the value of which was disputed in calculating the marital assets.

This appeal involves the provisions for division of the marital property and for alimony. The original judgment provided:

5. That Petitioner shall be awarded as and for a cash property settlement her share in the net equity of the property owned by the parties the sum of One-hundred thousand and no/100 Dollars ($100,000) payable as follows, without interest:

| | |
|---|---|
| April 1, 1981 | $35,000.00 |
| July 1, 1981 | 15,000.00 |
| July 1, 1982 | 50,000.00 |

6. That Petitioner is awarded as and for alimony the sum of One-thousand Three hundred Sixty-eight and 85/100 dollars ($1,368.85) per month payable on the first of each month commencing May 1, 1981. The payments shall continue for a period of 122 months or until the death of the Petitioner, whichever occurs first, and shall continue notwithstanding the remarriage of Petitioner. In the event of the death of Respondent the alimony then remaining shall be a lien against the estate of the Respondent.

\* \* \* \* \* \*

13. Respondent shall execute a mortgage as collateral for the unpaid property settlement in the amount of Sixty-five Thousand and no/dollars ($65,000.00) against the real estate described herein.

In 1984 appellant brought a motion to reduce the alimony awarded, claiming a significant decrease in his income, which is derived from the farming operation. Respondent opposed the motion and claimed that the "alimony" awarded in paragraph 6 was intended to be the remainder of the property settlement. It was termed "alimony" and spread over ten years in order to be deductible on appellant's income tax returns.

The trial court found ambiguity as to the nature of the provision and determined that it would go beyond its stated terms and hear testimony on the intent of the parties in drafting that part of the stipulation. Testimony was heard from each spouse, their former attorneys, and the attorney specially retained to draft the "alimony" provision.

Appellant's former attorney testified, by deposition, that the $100,000 payments provided in paragraph 5 were the sole property settlement for respondent. He stated that the monthly amount of $1368.85 and the 122-month term of alimony were both the result of negotiations.

Respondent's former attorney testified that the monthly amount of alimony was derived from the value of the marital estate, as follows:

$725,000 gross value
−190,000 Liabilities
535,000
(divided by 2 for 50/50 split)
267,500, or
267,000 (rounded off)
−100,000 (cash settlement)
167,000
(divided by 122 months)
$1368.85

Thus, according to his testimony, the "alimony" was a basic part of the property settlement, termed "alimony" and made payable over 122 months to obtain a tax advantage for appellant.

The attorney who drafted the alimony provision stated that the amount of alimony was intended to cover the wife's monthly living expenses. He testified he was not told by the attorneys for the parties that the provision he was drafting was actually part of the property settlement. Neither did they specify that it was intended as alimony or spousal maintenance. The monthly payment figure was given to him.

Respondent's application for temporary maintenance, submitted in 1980, listed expenses of $2,033.42 per month. The court ordered temporary maintenance of $1000 per month, later increased to $1,150.

Appellant and respondent each testified as to his or her understanding of the intent of the provision and the value of the farm.

The trial court found that the "alimony" provision was part of the property settlement. It later ordered judgment for the arrearages owed by appellant and amended the judgment to grant respondent a mortgage on the farm as security for the balance of the monthly payments.

## ISSUES

1. Was the alimony provision in the stipulated judgment ambiguous?

2. Did the trial court err in construing the "alimony" provision as a part of the property settlement?

3. Did the trial court err in amending the judgment to provide security for the monthly payments found to be part of the property settlement?

## DISCUSSION

### I

A writing is ambiguous if, judged by its language alone and without resort to parol evidence, it is reasonably susceptible of more than one meaning. *Metro Office Parks Co. v. Control Data Corp.*, 295 Minn. 348, 351, 205 N.W.2d 121, 123 (1973). In *Vanderleest v. Vanderleest*, 352 N.W.2d 54 (Minn.Ct.App.1984), this court indicated that a dissolution provision is unambiguous if

[i]ts meaning can be determined without any guide other than knowledge of the facts on which the language depends for meaning.

*Id.*, 352 N.W.2d at 57 (citations omitted).

The trial court implicitly found ambiguity, stating:

It isn't necessarily ambiguity as it appears from the words used in the stipulation, but merely a lack of clarity overall, to what, in fact, that provision is regardless of what it's called.

■ Standing alone, the word "alimony" is unambiguous. A determination of whether ambiguity exists, however, cannot be made by reading words in isolation. *Metro Office Parks*, 295 Minn. at 352, 205 N.W.2d at 124. A monthly payment is provided in paragraph 6, consistent with the customary form of alimony, but several of the terms of payment are uncharacteristic of alimony or spousal maintenance. The issue presented is how to categorize a provision which bears most of the characteristics of something other than what it is labeled. We agree with the trial court's conclusion that paragraph 6 is ambiguous and must be construed according to its characteristics and intent.

At the time of the 1981 dissolution, the term "alimony" had been replaced by "maintenance," defined substantially the same. Minn.Stat. § 518.54, subd. 3 (1980). There was, and remains, a statutory presumption as to the termination of maintenance:

> Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

Minn.Stat. § 518.64, subd. 3 (1980).

■ Paragraph 6 of the judgment provides that "alimony" will cease only upon the death of Geraldine Landwehr. Although rebutting the statutory presumption, this variation from the ordinary maintenance provision, along with the odd-amount monthly payment and the 122-month time period, creates an ambiguity as to whether a property settlement was intended, rather than alimony or maintenance.

We note that a similar issue was involved in *Ruud v. Ruud*, 372 N.W.2d 851 (Minn. Ct.App.1985), *pet. for rev. granted* (Minn. Oct. 29, 1985). In *Ruud* the parties stipulated that the husband would pay "as and for maintenance" annual payments of $10,-000 for the next two years. 372 N.W.2d at 852–53. When his ex-wife remarried, the husband sought termination of the "maintenance" obligation, in accordance with the statutory presumption. Minn.Stat. § 518.-64, subd. 3. The trial court denied the motion on grounds other than an ambiguity in the provision. The majority opinion of this court indicated it found no ambiguity, 372 N.W.2d at 854, while two dissenting opinions disagreed. *Id.* at 855–56. The "maintenance" provision in *Ruud*, however, included no variation of the statutorily presumed termination of maintenance, nor an odd-amount monthly payment and time period such as were provided here.

■ The trial court's inquiry into the intent behind the alimony provision did not constitute a reopening of the judgment without the fraud, mistake, or other grounds required by Minn.R.Civ.P. 60.02. *See Webb v. Webb*, 360 N.W.2d 647, 649 (Minn.Ct.App.1985) (interpretation of division of stock which split after the decree was not a modification of the judgment); *Edelman v. Edelman*, 354 N.W.2d 562, 564 (Minn.Ct.App.1984) (clarification of property division was not a modification).

## II

There was contradictory testimony as to the intent of the alimony provision and the derivation of its terms. This court must defer to the trial court's assessment of the relative credibility of the witnesses. *Strouth v. Wilkison*, 302 Minn. 297, 299, 224 N.W.2d 511, 513–14 (1974). We note that the monthly "alimony" amount was almost exactly the balance of the wife's share of marital property as calculated by her former attorney. The testimony that the monthly payment figure of $1,368.85 was a negotiated amount intended to cover the wife's living expenses was not substantiated by respondent's application for temporary relief or the court's orders for temporary maintenance.

The trial court's finding that the alimony provision was intended to be part of the property settlement was not clearly erroneous. *See Donnay v. Boulware*, 275 Minn. 37, 44, 144 N.W.2d 711, 716 (1966) (construction of ambiguous language of a contract is a question of fact where extrinsic evidence is received); Minn.R.Civ.P. 52.-01.

### III

Having found the payments provided in paragraph 6 to be part of the property settlement, the trial court nevertheless amended the judgment to give respondent a mortgage to secure the payment of "alimony." The court's order stated:

> *Minn.Stat.* § 518.24 and 518.61 are remedies available to this court to help secure and enforce payments of maintenance or support under the terms of a Judgment and Decree of marital dissolution. The obvious purpose of these statutes is to help insure the receipt of necessary funds. Even though the payments to be received by the petitioner have been interpreted to be property settlement payments, they are necessary funds for her based upon the limited other income available to her.

Minn.Stat. § 518.24 allows the court to require security "when maintenance or support payments are ordered." Minn. Stat. § 518.61 allows appointment of a trustee to receive "any money ordered to be paid as maintenance or support money." Since the trial court found the monthly payments to be part of the property settlement, neither of these sections is applicable.

A lien or mortgage on the marital property imposed to secure the final payment of the property settlement requires no statutory authority, being simply an inherent part of the property division. *See Kerr v. Kerr*, 309 Minn. 124, 243 N.W.2d 313 (1976) (husband's lien on homestead awarded to wife was part of property division). A property division, however, is final. *Id.* at 126, 243 N.W.2d at 314; Minn. Stat. § 518.64, subd. 2 (1984). Having

found the "alimony" provision to be part of the property settlement, the trial court's imposition of additional security represents an improper modification of the property settlement.

### DECISION

The trial court properly found ambiguity in the alimony provision. Its interpretation of that provision as part of the property settlement was not clearly erroneous. The court erred, however, in modifying the provision by imposing security.

Affirmed in part and reversed in part.