In Re the Marriage of Bonnie M. NEL-
SON, f/k/a, Bonnie M. Quade,
Petitioner, Respondent,

v.

David L. QUADE, Appellant.

No. C7–87–522.

Court of Appeals of Minnesota.

Oct. 13, 1987.

Review Denied 22, 1987.

Before Heard, considered and decided by NORTON, P.J., and MULALLY and LOMMEN, JJ.*

## OPINION

A. PAUL LOMMEN, Judge.

This is an appeal from an order denying appellant's motion for an evidentiary hearing to redetermine amounts under an order for dissolution of marriage. Appellant claims that the property settlement was in part a maintenance award and thus open for redetermination. In the alternative, appellant claims he is entitled to an evidentiary hearing on the issue of whether he and his ex-spouse have made an enforceable agreement concerning their obligations under a property settlement award. Respondent in turn seeks review of the trial court's order denying her attorney fees in defending the trial court action. Respondent also seeks attorney fees for having to defend this appeal. We affirm on the trial court's finding that this was a property settlement and also affirm the award of attorney fees. We reverse and remand for an evidentiary hearing on the issue of enforceability of the agreement between the parties.

## FACTS

Bonnie and David Quade were married in 1963. In 1983 they commenced a dissolution proceeding. After a lengthy court trial, an amended order for judgment dissolving the marriage was entered on July 13, 1984. Bonnie took back her maiden name of Nelson.

The major issue in the trial was determining the amount of marital assets. Most of the assets were held by David or by one of the corporations which he owned. The court appointed an expert to determine the amount of marital assets. The expert's final amended finding was that the marital assets (equity) were $903,743.

Among its other provisions, the amended order of July 13, 1984 directed David to pay

Richard G. Nadler, St. Paul, for petitioner, respondent.

Jerrold M. Hartke, Rolin L. Cargill, So. St. Paul, for appellant.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Bonnie $450,000 "as and for full and final property settlement and maintenance." $50,000 was payable 90 days from the order and the balance ($400,000) was payable in four annual $100,000 installments starting June 1, 1985. David also was to pay 10% interest on outstanding principal. As security, Bonnie was granted a mortgage on real estate David owned valued at $315,-000. The order also provided that should David be more than 30 days late on an installment, Bonnie could bring an action to obtain a money judgment for the entire balance due.

David appealed the court's finding as to the value of the marital assets, claiming the valuation of his business property was too high. This court affirmed the trial court's findings stating that the valuations were within the limits of amounts estimated by witnesses for both parties. *Quade v. Quade,* 367 N.W.2d 87, 89 (Minn.Ct.App. 1985), *pet. for rev. denied* (Minn. July 11, 1985).

In August, 1984, David and Bonnie fashioned their own settlement agreement. This post-dissolution agreement was initially approved by the trial court on August 10, 1984. However, the order approving the post-dissolution agreement was vacated on October 9, 1984 after a motion by a third party creditor. The court stated that the agreement was prejudicial to the parties' creditor and therefore was not effective.

Late in October, the parties again entered into an agreement fairly similar to the agreement which was initially presented to the court on August 10, 1984. The agreement required David to pay Bonnie $182,800. $10,000 was due immediately, and the balance ($172,800) would be paid in semi-annual installments of $7,200 over 12 years. In addition, David agreed to pay $29,000 to Bonnie's creditors. It is not clear whether or not Bonnie consulted an attorney about this agreement. This second agreement was not submitted for court approval.

Throughout 1984, 1985 and 1986, David made payments to Bonnie from time to time. The total of payments was some-what less than that called for in the parties' post-dissolution agreement. On February 23, 1986, Bonnie signed an instrument entitled "Release of All Claims." The agreement recites that for "One dollar and other good and valuable consideration" Bonnie releases David from all obligations arising out of their divorce action. It is not clear whether or not Bonnie consulted an attorney before signing this release.

Late in 1986 Bonnie demanded that David make additional payments to her and he refused. On October 15, 1986 Bonnie moved the trial court for three orders:

1) for judgment against David for the unpaid amount under the July 13, 1984 order;

2) finding David in contempt for not paying her according to the July 13, 1984 order; and

3) declaring the agreement (of October 1984) and release (of February 23, 1986) to be invalid.

The court held a hearing on November 17, 1986 but only received testimony on the contempt issue. In his defense, David argued that he should not be held in contempt for failure to pay a money judgment which only pertains to a property division and not to support or maintenance.

The court denied both the motion to hold David in contempt and the motion to declare the agreement and release invalid. However, the court did order a money judgment against David for the unpaid balance of the amount in the original July 13, 1984 order ($434,402, plus interest). The court stated that in the absence of advice of counsel resulting in a valid stipulation to amend the court's order of July 13, 1984, the original judgment and decree would not be set aside. The money judgment was entered on November 26, 1986 and appellant did not appeal therefrom.

In December 1986 the trial court issued an order, directed at Bonnie, requiring her to show cause why execution on the November 26, 1986 judgment should not be stayed. This order also provided for a temporary restraining order staying execution of the judgment until a hearing sched-

uled for January 9, 1987. Neither Bonnie nor her counsel were notified before David's counsel obtained this order.

At the January 9, 1987 hearing, David moved for an amendment of the July 13, 1984 order. He argued that the order by its terms was in part a maintenance award and was thus subject to modification. In the alternative, if the award was purely a property settlement, David argued that the agreement and release between the parties should be enforced to either reduce or eliminate the amount he owed. Thus, he requested an evidentiary hearing on the issue of enforceability of the agreement and release. Bonnie argued against those motions and also moved for award of over $4,000 in attorney fees, arguing that David had used unfair tactics and advanced an unsupportable position.

In its order of February 11, 1987, the trial court found that the original July 13, 1984 order was purely a property settlement. The court further ruled that any post-dissolution modifications of the property settlement were unenforceable because there was no court approval. Consequently, the court denied David's motion for an evidentiary hearing. The court awarded $500 in attorney fees to Bonnie.

## ISSUES

1. Did the trial court err in finding that its July 13, 1984 order provided solely for a property division and not maintenance?

2. Did the trial court err in denying appellant an evidentiary hearing on the issue of the enforceability of post-dissolution agreement and release?

3. Did the trial court err in awarding respondent only $500 in attorney fees?

4. Is appellant's appeal baseless?

## ANALYSIS

*Maintenance or Property Settlement*

The trial court took no live testimony on this issue. Therefore, this court may review all the facts de novo. *Northern States Power Co. v. Williams*, 343 N.W.2d 627, 630 (Minn.1984).

The trial court cannot change the terms of a judgment simply based on a previous judicial error. *Anderson v. Anderson*, 228 Minn. 514, 518, 179 N.W.2d 718, 722 (1970) (cited in *Arzt v. Arzt*, 361 N.W.2d 135, 136 (Minn.Ct.App.1985). However, the trial court may clarify the terms of the order if they are ambiguous. *Landwehr v. Landwehr*, 380 N.W.2d 136, 139 (Minn.Ct.App.1985). The court may thus inquire into the intent shown by the order. *Id.*

A court may issue a declaratory judgment to clarify the ambiguous order. *Bengston v. Setterberg*, 227 Minn. 337, 346, 35 N.W.2d 623, 627–28 (1949). The order was ambiguous because it gave only one dollar figure ($450,000) for property division and maintenance. It is not clear from the order's face how to allocate between them. However, it is apparent from other facts that the award was purely a property settlement.

The most important factor is that David himself in his contempt hearing admitted that this was a property division and not maintenance or support. The parties' intent is a major consideration to determine the nature of an award. *Rudd v. Rudd*, 380 N.W.2d 765, 766 (Minn.1986). In addition, the award was roughly one-half of the marital assets, it had a specified interest rate and acceleration clause, and it required large lump sum payments. All these factors are characteristic of a property settlement and not an award of maintenance. *See* Minn.Stat. § 518.58 (1984). Therefore, the trial court correctly found that its July 13, 1984 order called only for a property settlement.

*Evidentiary Hearing*

The trial court ruled that the post-dissolution agreement and release executed by the parties were invalid because they were not approved by the court. The trial court cited *Dent v. Casaga*, 296 Minn. 292, 208 N.W.2d 734 (1973) and *Heldt v. Heldt*, 394 N.W.2d 535 (Minn.Ct.App.1986) in holding that any extra-judicial attempt to modify a dissolution decree was unenforceable.

Therefore, the trial court saw no need for an evidentiary hearing on this issue.

*Dent* involved a modification of child support payments under the divorce decree. The court held that a party may seek to modify the decree, "but until such modification has been ordered, the decree is entitled to enforcement as originally ordered." *Id.*, 296 Minn. at 296, 208 N.W.2d at 737. The cases following *Dent* have applied its holding to modifications of custody, maintenance and child support. *Tell v. Tell*, 383 N.W.2d 678, 682–83 (Minn.1986); *Hebeisen v. Hebeisen*, 401 N.W.2d 420, 421 (Minn.Ct. App.1987); *LeTendre v. LeTendre*, 388 N.W.2d 412, 416 (Minn.Ct.App.1986); *Lindberg v. Lindberg*, 379 N.W.2d 575, 579 (Minn.Ct.App.1985), *aff'd*, 384 N.W.2d 442 (Minn.1986); *Taflin v. Taflin*, 366 N.W.2d 315, 319 (Minn.Ct.App.1985); *Stangel v. Stangel*, 366 N.W.2d 747, 749 (Minn.Ct. App.1985). However, the holding in *Dent* has never been expanded to encompass modification of a simple property settlement award.

Bonnie argues that this court in *Heldt v. Heldt*, 394 N.W.2d 535 (Minn.Ct.App.1986) cited *Dent* to justify not enforcing an extra-judicial post-dissolution property settlement modification. Although the parties in *Heldt* did modify the property award, they also attempted to modify child support payments and the right to possession of the homestead. Since the property award modification was interrelated and contingent upon modification of child support and possession of the homestead, the court properly invalidated the entire agreement under the principle in *Dent*. *Id.* at 535.

■ Unlike the cases following *Dent*, this case involves a decree providing simply for property settlement with no issues of custody, maintenance or child support. The parties' agreement and release deal solely with allocation of property between the parties. A property settlement in a marital dissolution decree is essentially a debtor-creditor matter which does not require continuing family court jurisdiction as do matters of custody, child support and spousal maintenance. *See* Minn.Stat. §§ 518.175, 518.18, 518.55, subd. 1, 518.57,

518.64, subd. 1 and 518A.01–518A.25 (1986). In terms of collection of debt, a property settlement is also distinguished from all other dissolution awards because it is dischargeable in bankruptcy like any other ordinary debt. 11 U.S.C. § 523(a)(5) (1986); *Coakley v. Coakley*, 400 N.W.2d 436, 440 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. April 23, 1987); *Stolp v. Stolp*, 383 N.W.2d 409, 412 (Minn.Ct.App.1986).

■ Ex-spouses are generally competent to enter into contracts with each other. *See Mjolsness v. Mjolsness*, 363 N.W.2d 839 (Minn.Ct.App.1985). In addition, ex-spouses are competent to make agreements concerning matters subsidiary to a property settlement. *Reshetar v. Reshetar*, 310 Minn. 563, 246 N.W.2d 846 (1976). Consequently, there is no reason why ex-spouses are not competent to contract in a simple debtor-creditor capacity concerning matters not subject to continuing family court jurisdiction.

■ We therefore hold that the parties were competent to enter into agreements concerning solely matters of property division. Thus, it was error for the trial court to deny David's request for an evidentiary hearing concerning the validity of their post-dissolution agreement and release. By so holding, we do not rule on the enforceability of the terms of the agreement and release. Enforceability will depend on whether all necessary elements of a contract are satisfied. Therefore, Bonnie will be free to raise contract defenses such as failure of consideration, coercion or mistake.

■ It should be made clear that the money judgment entered November 26, 1986 is not directly affected by this appeal because it was not appealed from within 90 days. Minn.R.Civ.App.P. 104.01. The action for enforceability of the agreement and release is at this stage a declaratory judgment action because the November 26, 1986 judgment has not yet been attacked. Until a motion for relief is made based on satisfaction, release or discharge, the judgment is effective. Minn.R.Civ.P. 60.02(5). It is then up to the trial court to determine

if the new agreements between the parties constitute a valid accord and satisfaction of the judgment. *See Action Instruments Co., Inc. v. Hi–G, Inc.*, 359 N.W.2d 664 (Minn.Ct.App.1984).

*Attorney Fees*

Bonnie claims attorney fees pursuant to Minn.Stat. § 549.21 (1986) alleging that David asserted a frivolous claim at trial and now is pursuing a baseless appeal. She also claims that counsel's obtaining a temporary restraining order to stay an execution of judgment was done in bad faith, entitling her to attorney fees.

An award of attorney fees under section 549.21 is within the discretion of the trial court. *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn.1982). In this case, David's substantive claims made at trial and on appeal have been based on good faith arguments. However, David's counsel's use of an order to show cause to obtain a temporary restraining order staying execution of a judgment is not authorized by statute or rule. *See* Minn.Stat. § 550.36 (1986); Minn.R.Civ.P. 62.01 (stay authorized only if motion pending under Rules 50, 52, 59, 60). A temporary restraining order is only available if counsel first attempts to contact opposing counsel and no such effort was made in this case. Minn.R.Civ.P. 65.01(b).

Consequently, David's counsel had no good faith basis for his actions and an award of attorney fees is appropriate. *Blattner*, 322 N.W.2d at 321. The award of $500 was a reasonable sanction and was not so low as to constitute an abuse of discretion by the trial court. *See Wicker v. City of Maplewood*, 386 N.W.2d 327, 329 (Minn.Ct.App.1986). Accordingly, we affirm the trial court's award of attorney fees and deny Bonnie's request for attorney fees on appeal.

**DECISION**

The trial court's finding that the July 13, 1984 order for judgment constitutes purely a property settlement award is affirmed. The trial court's order denying appellant an evidentiary hearing is reversed and the matter is remanded for further proceedings. The award of attorney fees was within the trial court's discretion and is affirmed. Appellant's request for attorney fees on this appeal is denied.

Affirmed in part, reversed in part and remanded.