*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1394**

Shawn Paul Haren,
Respondent,

vs.

Nicole Frances Haren,
Appellant.

**Filed April 6, 2026**
**Affirmed**
**Ross, Judge**

Olmsted County District Court
File No. 55-CV-25-3032

Shawn Paul Haren, Mesa, Arizona (self-represented respondent)

Brian A. Gravely, Meagher + Geer, P.L.L.P., Minneapolis, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Bratvold, Judge; and Cleary, Judge.[*]

**NONPRECEDENTIAL OPINION**

**ROSS**, Judge

Shawn Haren sued his former wife, Nicole Haren (now Nicole Kopsell), alleging breach of contract and unjust enrichment premised on her failure to reimburse him for the loan that he obtained to cover deferred mortgage payments on their marital home while

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Kopsell continued living in the home pending its refinancing in her name. The district court entered summary judgment favoring Haren based on the undisputed evidence that a postdivorce agreement allowed Kopsell to remain in the home while Haren made ongoing mortgage payments, that his mortgage-payment obligation was deferred under a pandemic-related federal loan program that made the payments on Haren's behalf, and that, when Kopsell eventually refinanced the home in her name, she knowingly failed to include the amount of debt that Haren incurred under the federal program and failed to reimburse him for that debt. Because Kopsell argues uncompellingly on appeal that the district court lacked subject-matter jurisdiction to decide the suit, that the district court should not have considered summary judgment without first requiring the parties to engage in negotiated or mediated settlement efforts, and that the district court failed in its duty to adequately assist Kopsell as an unrepresented party, we affirm.

### FACTS

Nicole Kopsell and Shawn Haren divorced in 2019 under a joint dissolution petition that included a property-division provision with terms about the disposition of their marital home. The stipulation provided that the "[r]eal [e]state [p]roperty is currently listed for sale through ReMax. Mortgage on this property will be paid by [Haren] until sale of property is concluded. [Kopsell] will occupy property until sale of property has concluded." The provision did not state how the parties intended to distribute sale proceeds, but the record indicates that the parties contemplated that proceeds were to be divided between them.

After the divorce but before any sale, Kopsell decided that she wanted instead to keep the home rather than sell it, refinance it in her name, and remove Haren from any

2

existing loan obligation secured by the mortgage. Haren accommodated Kopsell's desire to keep the home by agreeing to make the monthly mortgage payments until she obtained refinancing, and Kopsell in turn agreed to repay Haren for those ongoing mortgage payments.

Kopsell continued to reside in the home, and Haren continued to make the monthly payments until the onset of the COVID-19 pandemic, when the federal government offered a payment-deferral program. Under that program, the government would make mortgage payments during the deferral period on behalf of a qualifying homeowner who, in exchange, would execute a promissory note to the federal program to cover the cost of the payments made on the homeowner's behalf.

Haren participated in the deferral program for a period that expired in August 2021, resulting in his incurring a debt of $21,600.90. Kopsell was aware of Haren's debt and promised to include that amount in her request for refinancing so that Haren was repaid both for the money he expended directly and for the debt he incurred to maintain the mortgage payments. Kopsell finally obtained refinancing in April 2022. She then assured Haren, falsely, that she had included the $21,600.90 deferral amount in her refinancing. She never repaid Haren to cover his obligation on his promissory note to the government.

Haren sued Kopsell for her failure to include the promissory-note amount in her refinancing or to reimburse him for that debt, alleging breach of contract and unjust enrichment. Kopsell failed to answer the complaint, and Haren moved the district court to enter summary judgment in his favor.

Kopsell appeared at the summary-judgment hearing without legal counsel, saying that she had received "the letters and forms from the lawyer" but was not aware she had to file anything in response. The district court observed that Kopsell had been properly served, that she had failed to file an answer to the civil complaint, and that she had failed to respond to the summary-judgment motion. When Kopsell asked whether she was "allowed to get a lawyer and fight this," the district court answered, "The time to do that, Ms. Kopsell, was before today." The district court granted summary judgment favoring Haren based on the facts just recounted.

Kopsell appeals.

## DECISION

Kopsell raises three arguments on appeal. She argues first that the district court lacked subject-matter jurisdiction to modify the property division established in the dissolution decree. She argues second that the district court should not have considered summary judgment without first requiring the parties to engage in negotiated or mediated settlement efforts. And she argues third that the district court improperly granted summary judgment without *sua sponte* granting a continuance for her to obtain legal counsel. For the following reasons, none of her arguments convinces us to reverse.

## I

Kopsell contends that the district court lacked jurisdiction to rule on the parties' postdivorce agreement because the court's decision improperly modified the final dissolution decree. We review *de novo* challenges to the district court's subject-matter jurisdiction. *County of Washington v. City of Oak Park Heights*, 818 N.W.2d 533, 538

(Minn. 2012). It is true that the district court's jurisdiction over a divorce "is purely statutory" and that its power extends no further than that which is statutorily delegated. *Kienlen v. Kienlen*, 34 N.W.2d 351, 354 (Minn. 1948); *see also Gannon v. Gannon*, 102 N.W.2d 677, 679 (Minn. 1960). And a district court has limited authority to modify a final dissolution decree after judgment is entered. *See Shirk v. Shirk*, 561 N.W.2d 519, 522 (Minn. 1997). The sole avenue available to a party seeking judicial modification of a property division in an otherwise final dissolution decree is a motion to reopen the decree under Minnesota Statutes section 518.145, subdivision 2 (2024). *Id.* A district court attempting to modify a decree's property-division provision without reopening the decree is "without jurisdiction" to do so. *Stolp v. Stolp*, 383 N.W.2d 409, 411 (Minn. App. 1986). On these jurisdictional foundations, Kopsell builds her case that the district court lacked jurisdiction, arguing that its summary-judgment decision effectively modified the dissolution decree.

Kopsell's jurisdiction argument fails. Although the district court could not modify the decree's property division itself, these jurisdictional limits on its authority do nothing to prevent the divorced parties from entering into a new agreement about the disposition of the home. That their postdissolution agreement concerned a home that had been part of the property division in their dissolution decree is merely an incident establishing a factual circumstance underlying their agreement. A postdissolution agreement between parties that modifies only a decree's property-division requirements is "essentially a debtor-creditor matter which does not require continuing family court jurisdiction[.]" *Nelson v. Quade*, 413 N.W.2d 824, 828 (Minn. App. 1987), *rev. denied* (Minn. Dec. 22, 1987). The

5

enforceability of the agreement about the property becomes simply a matter of "whether all necessary elements of a contract are satisfied." *Id.* The undisputed facts here established that they were, under the terms we have already summarized. Kopsell's contention that the district court's enforcement of the parties' postdivorce agreement was invalid fails as a matter of law. The district court did not lack jurisdiction over the action overall or over the summary-judgment dispute.

## II

Kopsell next contends that the district court should not have decided summary judgment without first requiring the parties to engage in negotiated or mediated settlement efforts. She specifically contends that the parties should have pursued alternative dispute resolution (ADR) before resorting to litigation under either rule 114.01 or 310.01 of the Minnesota General Rules of Practice, which require parties to engage in ADR in civil cases (rule 114.01) and family-law cases (rule 310.01). She relatedly argues that Haren should not have filed his summary-judgment motion before satisfying meet-and-confer requirements of general-practice rules 303.03(c) and 115.10, each of which requires parties to either confer regarding settlement or certify as to their efforts of doing so before filing a motion.

We choose not to address these arguments. We generally do not consider issues raised for the first time on appeal. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Kopsell did not raise these alleged procedural concerns before the district court and has lost the opportunity to raise them on appeal. We add that the district court enjoys discretion in its application of the general-practice rules, and Kopsell cites no authority supporting

the proposition that the district court abuses its discretion by failing to strictly apply their ADR provisions. *See* Minn. Stat. § 484.33 (2024); *Pfeiffer ex rel. Pfeiffer v. Allina Health Sys.*, 851 N.W.2d 626, 636 n.7 (Minn. App. 2014), *rev. denied* (Minn. Oct. 14, 2014). Although for these reasons we doubt Kopsell's argument would prevail on the merits, we reject the argument as forfeited.

**III**

Kopsell argues last that the district court should have *sua sponte* granted her a continuance to allow her time to hire an attorney to oppose Haren's summary-judgment motion. She recognizes that she never expressly sought a continuance but contends that the district court should have treated her inquiry ("am I allowed to get a lawyer and fight this") as a motion for a continuance. She bases her contention on her assertion that the district court had a "heightened responsibility" to assist her as an unrepresented litigant. It is true that "some accommodations may be made for pro se litigants," but we have nevertheless "repeatedly emphasized that pro se litigants are generally held to the same standards as attorneys[.]" *Fitzgerald v. Fitzgerald*, 629 N.W.2d 115, 119 (Minn. App. 2001). We understand that some district court judges might, in their discretion, have construed Kopsell's words liberally and treated them as a request for a continuance, or perhaps inquired further as to whether she was asking for one. But we are aware of no authority establishing that the district court was bound to treat Kopsell's question as a motion to continue, and we decline to hold that it was.

And even treating the district court's response to Kopsell's statement as a decision declining to grant a continuance, we uphold the decision. We review the district court's

denial of a continuance motion for an abuse of discretion. *Dunshee v. Douglas*, 255 N.W.2d 42, 45 (Minn. 1977). Kopsell cites two cases in support of her contention that the denial here was an abuse of discretion, *Weise v. Commissioner of Public Safety*, 370 N.W.2d 676 (Minn. App. 1985) and *Kasson State Bank v. Haugen*, 410 N.W.2d 392 (Minn. App. 1987). Both involve materially different circumstances. In *Weise*, we held that the district court abused its discretion by denying an appellant's request for a continuance to allow time to procure necessary witnesses, despite believing that the appellant had never received the notice that triggered the requirement to bring forth those witnesses. 370 N.W.2d at 677–78. In *Kasson*, we likewise held that a district court abused its discretion by denying a continuance to allow an unrepresented litigant time to hire a lawyer, despite the fact that the litigant had no knowledge of the ongoing legal proceeding until a day before the hearing. 410 N.W.2d at 395. In both cases, the party requesting a continuance had little or no notice of the matter at hand. In this case, by contrast, the record establishes substantial notice that alerted Kopsell first that she had been sued and second that Haren was seeking summary judgment on his claims. Haren's duly served summons dated February 14, 2025, informed Kopsell in bold print, "YOU ARE BEING SUED," "YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS," and "YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE . . . ." Kopsell filed no answer to the complaint. Then Haren's duly served notice of motion and motion dated May 8, 2025, informed Kopsell that he was bringing a motion for summary judgment to be heard in July 2025, followed by his duly served supporting memorandum of law and other documents dated June 8, 2025, detailing his claim for judgment. By the time of the

summary-judgment hearing, almost five months had passed since the lawsuit commenced and two months had passed since Kopsell became aware of Haren's motion, affording her plenty of time to have either secured counsel or timely requested a continuance to mount a defense. Under these circumstances, we cannot conclude that the district court acted outside its discretion by denying Kopsell's purportedly implied motion to continue.

**Affirmed.**